Good morning. Good morning. May it please the court, my name is Daniel Kim and I represent defendant appellants Naai. I would ask for two minutes for rebuttal purposes. I'll try to remind you when we get to that point. Thank you. Thank you. The issue that's presented by this appeal is the applicability of a motor vehicle exclusion where the factual allegations against the insured involve that dangerous condition of a property. There are no cases from the Hawaii Appellate Courts that address this particular issue and we have provided citations to two cases from other jurisdictions, namely the Essex v. City Bakersfield case from California and the Essex v. Grandstone Quarry case from New York in support of our proposition that the motor vehicle exclusion would not apply in connection with claims against an insured that involve premises liability. I was surprised that you would cite the Grandstone Quarry case in New York only because, in your 28J letter, only because it seemed to me that New York is split on this issue. If you look at DMP contracting versus Essex, it comes out just the opposite. So I was wondering why you would cite that. It seems to me there's even a split in New York Appellate Division about what to do. If you look at DMP, it says the plain meaning of the language which focuses on the connection between a vehicle and the injury, not between a vehicle and the insured, is that the bodily injury occurred as described is not covered. That's 907 New York S, I never remember what the S is, but it's the second 487. Your Honor, the Grandstone Quarry case turned in part on the reasonable expectation of coverage issue. Well, that was certainly in front of the 2010 DMP contracting case, and they came out opposite. We're dealing with Hawaiian law. Yeah, we are. What is the Hawaiian law with respect to reasonable expectation of the parties, and why do you think that that supports you? Well, with respect to the reasonable expectation of coverage, the Hawaii appellate cases or the opinions that have touched upon this issue are Fortune versus Wong and a number of other cases. I believe Allstate versus Pruitt, and in those instances, especially in Fortune, the reasonable expectation of coverage turned on the fact that the accident in Fortune did not occur on the insured premises. I think what Judge Schroeder is asking you, I mean, we're sitting in Hawaii. My understanding of Hawaiian law is there's a broad duty to defend, but Hawaiian law also says if the policy is unambiguous, the cases out there say that you don't have a reasonable expectation from that, so it seems to me for you to be successful under Hawaiian law, you have to show that this policy is ambiguous. Do you agree with that? I want to make sure we The Hawaiian law require that there be an ambiguity in the policy before we look to the reasonable expectation. Well, Your Honor, that is a, if I were to direct the Court's attention to the Del Monte versus Fireman's Fund case, it does not appear to turn on whether or not there's an ambiguity in the policy. And the Hawaii Supreme Court's holding in that case is that the objectively reasonable expectations of policyholders and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations. So if we find the policy is unambiguous, then you're saying under Hawaii law, your client can still have a reasonable expectation? That's correct. What is your best case for that? Because I'm going to ask the other side, because my understanding of the law, I think, is different. Well, you just read from the case. That's correct. It's a direct quotation. Is that the best you have? And that is a direct quotation from the Del Monte case, which has not been overruled by the Hawaii Supreme Court. Now, with respect to the applicability. Well, can I ask you just one more? Let's assume that we don't agree with you on that, just assume, and that there is an ambiguity required. Where is the ambiguity in the policy? Are you prepared to? Well, first of all, if the ambiguity in this policy is that it does not state by whom, well, the exclusion does not state by whom the act of the use, operation, maintenance of a motor vehicle is excluded. It's silent. Well, that's right. And so, therefore, the argument is that that means that if the accident is caused by any use, then it's excluded. That's the argument. Yeah, that is the argument, Your Honor. But then. Well, I guess, I guess what, how do you then answer the question? If you're going to do it globally, you say that that what you're the policy seems to exclude coverage for bodily injury arising from any use of a motor vehicle, not just the insurance. But then you also have in the same policy, the intentional acts exclusion is specific that only an insured's intentional acts are excluded. But the same act if committed by someone other than the insured would necessarily be excluded. So, it, the policy knows how to say when they want to limit it, and so isn't, you have to look at the whole policy, right? That's correct, Your Honor. So, why then do you, if, if they know how to say it when they want to limit it, then why, you know, how can you, how can you, we reasonably read it the way that you want us to read it? If the, if the policy were to be clear and unambiguous as all state would like it to be, instead of a phrase like by the insured being added to the end of the motor vehicle exclusion. The phrase by any person should be stated there. Then it would be crystal clear that that exclusion would apply to everybody. I have another question for you. You filed a notice of changed circumstances advising the court that the judgment had been entered against NAAI, NAAI favor in the underlying lawsuit. Does that have any effect on the issues in the consideration here? No, Your Honor, and the reason for that is, although all state initially did agree to accept the defense of the NAAIs, the defense itself was taken up by a different insurer, and that's reflected in the answer to the complaint that we filed. That is a part of the. So, it really has nothing to do with our interpretation of the policy, though. No, Your Honor. I mean, we still have to look to the language. But what worries me about that, when I saw it, does that really mean this is really a question between two insurance companies fighting with each other over attorney's fees? Well, at this point. If you were really covered, if the NAAIs were really covered by another insurance company and they were defending, isn't this a fight between them? That would be partially true, Your Honor. And you're really paid by one insurance company fighting for the NAAIs? Absolutely not, Your Honor. Then what are the NAAIs going to get out of this, if they had all their fees paid anyway? Well, what they are doing is preserving and protecting the subrogation rights of the insurer who actually defended. We're not in a position to give up those rights. Otherwise, we could face potential liability to the insurer. I see. So you're only doing it because they're forcing you to do it on a subrogation interest? Well, we're ensuring that we don't expose the NAAIs to any claim that the subrogation interest was impaired by their conduct. Well, that's what I worried about in that particular disclosure. I understand, Your Honor. What is your best textual argument to say that the plain language supports the reading of the policy that you advocate? Your Honor, going back to the interpretation of the policy as a whole, the coverage clause of the policy has to also be considered. The exclusion cannot be considered just in a vacuum. Well, that's right. And that's why my colleague said, well, they put all this in about whether the auto exclusion applied to vehicles connected to the insured in other parts of this policy. They did not hear. So it seems like all state knows how to write these things. And they didn't write it that way in this particular coverage you want. Well, perhaps that was their intent, but that's not clear from the policy. I guess that's why I ask you, what's your best textual argument? If I look at the whole policy and I look at what the language is in other parts of the policy compared to this, other exclusions of the policy compared to this, there's no question if your argument was to be made, they could have written it because they knew how to write it. My response to you, Your Honor, is that in the coverage clause, coverage is afforded for the insured for the insured's legal obligations for losses that result in damages arising out of bodily injury or property damage. So what is legal obligation in this matter for NAAI? They have no connection at all to any motor vehicle or the driver of this particular motor vehicle that was involved in the accident. So the legal obligation of the NAAIs arise out of a premises liability and then exclusions under Hawaii law serve to restrict and shake the coverage otherwise afforded, and that's under the Sterla case. So if we're to take a look at what's covered under the policy, premises liability is covered, and then how does this exclusion apply to that? It doesn't. It may be unambiguous as a court would hypothesize, but it doesn't matter because the exclusion doesn't apply anyway because the legal obligation for the NAAIs arise out of premises liability. Now, when... But the cause of the injuries was a car. That's correct, and Your Honor, you're getting me to the next point, which is that there can be more than one cause of an injury, and that's where the concurrent causation doctrine comes into play. You want to reserve the balance of your time for rebuttal? Yes, Your Honor. All right. Thank you. Good morning, Your Honors. Good morning. My name is David Herada-Stone. I'm counsel for Plaintiff Appalee Allstate Insurance Company. Appellant relies primarily on the reasonable expectations doctrine in advancing his assertion that the policy should be deemed to afford coverage, but in doing so, I think Appellant ignores the teachings of Fortune V. Wong and Del Monte that reasonable expectations of the insured are derived primarily from the policy itself. Well, now, you know, all of these policies sometimes, they're, you know, to the regular person, they're not that, you know, what we call unambiguous or ambiguous sometimes defy the reason of common sense. But I said my understanding of Hawaii law was that there's a broad duty to defend, but that arguably if the policy is unambiguous, then you couldn't have a reasonable expectation. What is your, am I overstating that? No, I concur with your analysis, and I think that's borne out by the Fortune V. Wong case. Well, let me ask you this. Okay, one of the exceptions to the motor vehicle exclusion says that the exclusion does not apply to a golf cart owned by an insured person when used for golfing purposes. What is the significance of the limitation in the exception to a golf cart owned by an insured person? Would that limitation be necessary if, as NAAI's contend, the exclusion only applied to vehicles owned or operated by an insured? I don't think it would. I think the reason for that exception is the policy is intended to essentially cover non-vehicular risks, risks normally incident to the ownership of real property. And I think in that particular exception, the policy is written with a view that the use of insured-owned golf carts and similar conveyances would fit within that risk. It seems to me that we look at reasonable expectation of coverage and that Essex would bring us, this is the Bakersfield case, or California case, would suggest that we might be able to find that it isn't a reasonable expectation if it is not an unusual and unfair limitation. Why is this not an unusual and unfair limitation? I think it's because, well, for several reasons. One, the exclusion is plain. I mean, is there any Hawaii law that would suggest this is not an unusual or unfair limitation? Well, there's no Hawaii law to suggest that it is an unfair or unusual limitation. And the Hawaii law with regard to interpreting insurance policies, although ambiguities are construed against the insurer, also holds, however, that policies are to be interpreted according to their plain language. And in this case, the plain language of the exclusion is such that its application is not limited to vehicles owned, operated, or used by the insured. I would just point out as well that, and since it has been raised by appellant, that it's not simply, or to the extent that the argument is that a reasonable insured would expect coverage because they wouldn't have auto coverage, for example, to apply to a situation like this, I would note that other policies are written explicitly to limit the scope of motor vehicle exclusions to vehicles operated or otherwise connected to the insured. And the insureds are certainly free to seek out such coverage. For example, in the Oahu transit case, the transit operator case cited in both parties' briefs, the commercial general liability policy in that case had a motor vehicle exclusion that was limited on its face to vehicles operated or owned by the insured. If I look at Mercier, I say Mercier, I don't know how you say it exactly, but I'm from Idaho. This is the Sixth Circuit talking. The Sixth Circuit explicitly says the question of what connection, if any, the insured had to the automobiles being operated at the time of accident would be critical. They are the only circuit which has talked to this. It seems to me they'd come down differently than on reasonable expectations here. Why shouldn't I follow my sister's circuit? Well, I guess the problem I have with Mercier is it seems to me that the discussion there essentially constitutes dicta. I think the court was saying that this would be a consideration for the district court or the state court deciding this coverage question, and Mercier was remanded with instructions to dismiss on the basis of the Sixth Circuit finding that the district court improperly exercises discretionary jurisdiction under the Declaratory Judgments Act. So we're not presented in Mercier with thorough or even substantive reasoning as to their conclusion as to what was critical or whether a causal link between the insured's connection with the vehicle and the injury was required for the exclusion to apply. Well, the reason that I'm kind of focusing on this is that we're really talking about a reasonable expectation of coverage. I mean, I look at the Essex, California case. The fact that the vehicle had no connection with any insured, not aware of any case in which a person who was not at fault for creating circumstances leading to the accident was found liable for an automobile accident where the person had no connection to the vehicles involved in the accident. Well, I think both the Russell case, which is an unpublished decision by a Ninth Circuit panel, and the Kaler case involve instances in which the insured defendants or the insureds did not have a direct connection with the vehicles involved, although both involve vehicular accidents, and the Russell case did involve a grandparent granting a permission to a child to ride in a vehicle. The grandparent or insured had no connection with that vehicle by way of ownership or use. So I think the reasoning in those cases, I think, is consistent with the interpretation of the language in all states' policy. And both cases actually involve substantively identical, identically worded exclusions. What is the risk that all state is trying to avoid here? I mean, the obvious risk would be the risk of injuries caused by automobiles operated by the policyholder or owned or to which the policyholder would have some connection. I'm just not quite understanding what we're talking about. It seems so vague. The risk that all states seeks to exclude here, and I think plainly and unambiguously does, is any risk of liability for vehicular accidents, whether the vehicles be operated or owned by the insured or not. Well, the insurance was insuring what, premises? Yeah, it was a personal liability policy that had been written to cover rental premises. So they're recognizing that people are going to be coming in and out with cars and all of that, and so they don't want to be responsible for car accidents that happen on the premises. Correct, Your Honor. And as I indicated, there are certainly other policies that may afford such coverage. This one doesn't. And, again, our baseline position would be that Hawaii law would mandate that the policy be interpreted according to its plain language and that we not read into it the words be insured or you're in front of ownership, operation, maintenance, use, et cetera, in the exclusion. What do I do with fortune? For it seems to me that Hawaii Supreme Court says that in some circumstances, insurance courts may require insurance companies to uphold objectionably reasonable expectations of applicants and intended beneficiaries regardless of the terms of the contract. I think the court there is discussing instances in which public policy or statutory mandate may require such extensions of coverage, and I don't think Appellant has pointed to any such mandate in this case. And we don't believe there is one. This is an area of coverage unlike, for example, heavily regulated automobile insurance coverage where the courts in Hawaii have basically respected the freedom of the parties to contract for policies as they see fit. And as noted in the Liberty Mitchell v. Sentinel case, Hawaii insurers have the same right as any party to limit their obligations and to specify conditions of coverage in the absence of a statutory or public policy mandate. So without any public policy mandate, which there is none here, we go back again to the language and look at the language itself. That's correct, Your Honor. I don't have any additional questions. I have no other questions. I don't have any additional questions. I think, Your Honor, Your Honors, your questions have basically covered most of our points of argument, unless you have any additional. We don't. Thank you. Thank you. Thank you. The final point that I'd like to make on rebuttal to the Court is that if the policy is to be interpreted as all state wishes to interpret it, it essentially leaves an insurer like the NISE without coverage. Where do they go? If they procured a motor vehicle insurance policy, would it cover the situation? Absolutely not. How did they get insurance otherwise? Go to their all state agent. But now just a minute. You said that in this situation the NISE were covered by some insurance. They stood and defended. What insurance stood and defended? The insurance policy that, I'm sorry, it's not in the record, but if the Court will indulge me, the insurance policy that defended NAAI was the CGL policy that its lessee obtained. The relationship in this particular situation was that the NISE owned the fee simple interest in the subject property, and they leased the entire property to another individual, Wagner, who was required under the lease to procure insurance and have the NISE named as additional insurers. And it was a CGL policy, right? Right. And the carrier did not decline the defense and so forth. But the thing is because. . . Well, they didn't decline defense. Did they also admit coverage? In the letter from, I'm sorry, Scottsdale, they did not reserve any rights. Okay. All right. Your time has basically expired. Thank you both for your argument. This matter will stand submitted. Joelle Nazara v. F.R. Log Homes, 10-16643. Good morning. Good morning. May it please the Court, my name is Fred Arnsmeyer, and I represent the plaintiff appellants Joelle and Connie Nazara.
judges: Schroeder, Callahan, Smith